Strafford
No. 86-330

ALBERT ENGLAND

v.

ANDREW TASKER

July 10, 1987

*Shea, Mertens, Sager & Sager,* of Wolfeboro (*Edward J. Mertens* and *Lorraine R. Sager* on the brief, and *Mr. Mertens* orally), for the plaintiff.

*Sullivan, Gregg & Horton P.A.,* of Nashua (*Richard A. Mitchell* on the brief and orally), for the defendant.

JOHNSON, J. This is an appeal from the granting of the defendant's motion for summary judgment by the Trial Court (*Nadeau,* J.). The case presents a single, novel issue for our review: whether the trial court erred in granting the defendant's motion for summary judgment based upon its application of the so-called "fireman's rule," which provides that neither a fireman nor a policeman can recover in tort when his injuries are caused by the same conduct that required his official presence. We affirm.

The facts are simply stated. On March 14, 1979, while the defendant was driving on Rollins Road in Rollinsford, his car crossed the center line and struck another vehicle traveling in the opposite direction. The defendant was subsequently charged with DWI. At the time of the accident, the plaintiff was the chief of police in Rollinsford, and was called to the scene in that capacity. In attempting to remove an injured passenger in the defendant's car, the plaintiff injured his knee. As a result of his injury, the plaintiff received workers' compensation benefits from the Town of Rollinsford's insurance carrier, St. Paul Property and Liability Insurance Company, and was ultimately forced to retire from police work. He receives State of New Hampshire retirement disability benefits.

The plaintiff brought a negligence action against the defendant by writ returnable the first Tuesday of April, 1985. The defendant appeared by counsel and filed a motion for summary judgment. The plaintiff timely objected, and on June 19, 1986, the trial court granted the defendant's motion. The plaintiff then brought this appeal.

The "fireman's rule," as it is called, is almost universally accepted. *See, e.g., Buchanan v. Prickett & Son, Inc.,* 203 Neb. 684, 687, 279 N.W.2d 855, 858 (1979); *Wilson v. Florida Processing Co.,* 368 So. 2d 609, 610 (Fla. 1979); *Roberts v. Rosenblatt,* 146 Conn. 110,

113, 148 A.2d 142, 144 (1959); *Anderson v. Cinnamon,* 365 Mo. 304, 307, 282 S.W.2d 445, 446–47 (1955). Notwithstanding its designation, the rule has been extended to policemen in most jurisdictions that recognize it. *See, e.g., Garcia v. City of South Tucson,* 131 Ariz. 315, 318, 640 P.2d 1117, 1120 (1982); *Hannah v. Jensen,* 298 N.W.2d 52, 55 (Minn. 1980); *Steelman v. Lind,* 634 P.2d 666, 667 (Nev. 1981); *Whitten v. Miami-Dade Water & Sewer Auth.,* 357 So. 2d 430, 431 (Fla. App. 1978); *Berko v. Freda,* 93 N.J. 81, 86, 459 A.2d 663, 666 (1983).

The roots of the rule go deep. It owes part of its genesis to antiquated property concepts relating to landowners and occupiers:

> "Courts have traditionally held that the duties owed to fire fighters, like those owed to other land entrants, depended on how the entrants were classified. Entrants were classified as invitees, licensees, or trespassers: invitees if they entered the property for the owner's economic benefit pursuant to either the owner's specific invitation or a general invitation to the public; licensees if they entered with the owner's permission but not for the owner's economic benefit; trespassers if they entered without either permission or invitation. Under the traditional rule, the landowner was obligated to maintain his premises in a reasonably safe condition for invitees, but not for licensees or trespassers."

Note: *The New Minnesota Fireman's Rule—An Application of the Assumption of Risk Doctrine: Armstrong v. Mailand,* 64 MINN. L. REV. 878, 879–80 (1980); *see also Walters v. Sloan,* 142 Cal. Rptr. 152, 154, 571 P.2d 609, 611 (1977). This basis for the rule is currently without justification, given the modern rejection of the licensee-invitee distinction in New Hampshire. *See Ouellette v. Blanchard,* 116 N.H. 552, 557, 364 A.2d 631, 634 (1976). "[T]he formalistic classification of invitees, licensees and trespassers no longer forms the basis of the rule." *Berko, supra* at 85, 459 A.2d at 665.

The rule has since found sustenance in the doctrine of assumption of the risk. A change in focus from status to assumption of the risk facilitates application of the rule to defendants other than owners and possessors of land:

> "[T]he fireman's rule is based on a principle as fundamental to our law today as it was centuries ago. The principle is not unique to landowner cases but is applicable to our entire system of justice—one who has knowingly and

voluntarily confronted a hazard cannot recover for injuries sustained thereby."

*Walters v. Sloan*, 142 Cal. Rptr. 152, 155, 571 P.2d 609, 612 (1977); *see also Armstrong v. Mailand*, 284 N.W.2d 343, 350 (Minn. 1979). Proponents of the rule argue in essence that public safety officers, by accepting the salary and benefits of their jobs, assume all normal risks inherent in their employment as a matter of law when they accept their employment and thus may not recover from one who negligently creates such a risk. *See, e.g., Maltman v. Sauer*, 84 Wash. 2d 975, 978, 530 P.2d 254, 257 (1975). This primary assumption of the risk "is not really an affirmative defense; rather, it indicates that the defendant did not even owe the plaintiff any duty of care." *Armstrong, supra* at 348. Early New Hampshire cases support the concept:

"[The fireman] agreed to fight all such fires as should occur. There is in his contract no distinction as to how the fires originated. If his contract has any bearing at all upon the relation of the parties, it establishes an express assumption of the risk here involved, and bars any recovery therefor."

*Clark v. Railroad*, 78 N.H. 428, 432, 101 A. 795, 797 (1917); *see also Smith v. Company*, 83 N.H. 439, 446, 144 A. 57, 60 (1928).

The assumption of the risk doctrine itself has been under considerable attack in recent years, however, and has little vitality today in light of the trend towards comparative negligence. *See, e.g.*, RSA 507:7-d (Supp. 1986).

The better justification for the fireman's rule today rests in considerations of public policy. "[L]iability is not always co-extensive with foreseeability of harm. The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just." *Krauth v. Geller*, 31 N.J. 270, 273, 157 A.2d 129, 130 (1960).

The rule is said to support the principle that "societal responsibility rather than possible tort recovery is the better, surer, and fairer recourse for a fireman or policeman injured in the line of duty." *Flowers v. Sting Security*, 62 Md. App. 116, 140, 488 A.2d 523, 535 (1985), *aff'd*, 308 Md. 432, 520 A.2d 361 (1987). Policemen and firemen are "paid to confront crises and allay dangers created by an uncircumspect citizenry," *Berko v. Freda*, 93 N.J. at 86, 459 A.2d at 666, and it is argued that "fundamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement," for which he is

trained at public expense. *Id.* at 87, 459 A.2d 666. The notion is that the citizenry should not be made to pay twice—through taxation and damages—for the rendering of a public service and injuries incidental thereto.

We think that relevant policy considerations indeed point to application of the rule. First, we agree that it is fundamentally unfair to ask the citizen to compensate a public safety officer, already engaged at taxpayer expense, a second time for injuries sustained while performing the very service which he is paid to undertake for the citizen's benefit. As the court noted in *Berko v. Freda*, 93 N.J. at 88, 459 A.2d at 666:

> "[A]s with the homeowner who hires a contractor to repair a weakened roof, the taxayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. Otherwise, individual citizens would compensate police officers twice: once for risking injury, once for sustaining it."

Certainly a taxpayer does not have the right to exclude police officers or firemen from emergency situations, or even to control their actions on the scene. Indeed, a citizen may in some instances have a legal duty to summon a public safety officer; and "to say [that the citizen] may, in the course of discharging that duty, risk tort liability to officers who are specially trained and hired to cope with these hazards, strikes us as inconsistent and unfair." *Pottebaum v. Hinds*, 347 N.W.2d 642, 645 (Iowa 1984). A contrary rule would conceivably have the effect of discouraging citizens from calling safety officers for fear of liability. At the very least, "any citizen seeking the aid of the police force may be expected to ensure that no condition even remotely giving rise to liability exists before he calls upon them to render assistance." *Williams v. Levitt*, 213 N.J. Super. 604, 607, 517 A.2d 1242, 1243 (1986).

◼ Further, "firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparation for their visit cannot reasonably be expected . . . ." RESTATEMENT (SECOND) OF TORTS § 345 comment c, at 228 (1965). We hold that the above policy concerns require that the fireman's rule be applied to preclude a police officer or fireman, both of whom are paid to confront crises and allay dangers created by an uncircumspect

citizenry, from complaining of negligence in the creation of the very occasion for their engagement.

■ In the case at bar, there is no question that the plaintiff was injured while responding in his professional capacity to the very type of situation for which he was paid and trained to cope. His complaint "is based on the same conduct that initially created the need for [his] presence in his official capacity," *Pottebaum v. Hinds*, 347 N.W.2d at 645, and thus is barred. We note that this is not a case involving a subsequent independent act of negligence directed toward the police officer, and thus we need not consider the extent to which the rule might apply in such cases. Also, since the plaintiff has not alleged anything but simple negligence in his writ below, we need not consider the extent to which the rule may apply where the defendant is charged with willful and wanton conduct.

■ The plaintiff argues that the fireman's rule denies him equal protection of the laws under part I, article 14 of the New Hampshire Constitution, which provides:

"Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

Since our holding today eliminates no pre-existing action at common law, the appropriate equal protection analysis turns on the rational basis test. *Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182 (1985). We find the test satisfied in this case for the very reasons we stated above for adopting the fireman's rule. The defendant's motion for summary judgment was properly granted.

*Affirmed.*

All concurred.