Hillsborough
No. 91-164

JOSEPH C. AKERLEY & a.

v.

THE HARTFORD INSURANCE GROUP & a.

November 25, 1992

*Donald M. Redden,* of Derry, by brief and orally, for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Robert E. Murphy, Jr.* and *Peter R. Chiesa* on the defendants' joint brief, and *Mr. Chiesa* orally), for defendant The Hartford Insurance Group.

*Backus, Meyer & Solomon,* of Manchester (*H. Jon Meyer* on the defendants' joint brief and orally), for defendant Metropolitan Insurance Company.

*Hamblett & Kerrigan, P.A.,* of Nashua (*Paul W. Chant* on the brief), by brief for Ronald Dowling, as *amicus curiae.*

THAYER, J. In this declaratory judgment proceeding, the insureds, Joseph C. Akerley and Paula S. Akerley, appeal a Superior Court (*Hampsey,* J.) order denying coverage under two uninsured motorist policies for an injury Joseph Akerley sustained while arresting a suspect. The defendants cross-appeal. We affirm.

In April 1986, Officer Joseph Akerley was on duty as a deputy sheriff when he was informed that an individual was shooting a weapon from his car toward people on Hampton Beach. Officer Akerley and another officer responded to the report and, eventually, cornered a suspect in his car in a parking lot. The suspect resisted arrest, and the officers were forced to physically remove him from his car. The suspect continued to struggle outside the car, whereupon all three individuals fell to the ground. Officer Akerley claims that he suffered a back injury from this incident.

Joseph and Paula Akerley entered claims for uninsured motorist benefits with the defendants, The Hartford Insurance Group (Hartford) and Metropolitan Insurance Company (Metropolitan). Hartford insured Officer Akerley's employer under a business auto policy, and Metropolitan insured the plaintiffs under their personal auto policy. After the defendants denied coverage, the plaintiffs brought a petition for declaratory judgment seeking to establish coverage under the policies. All parties moved for summary judgment. The Superior Court (*Pappagianis,* J.) granted summary judgment in favor of the defendants. The trial court determined that although the requisite causal connection existed between Officer Akerley's injury and the use of the uninsured vehicle, the fireman's rule precluded the plaintiffs from recovering because Officer Akerley's injury arose out of the same conduct that required his presence.

After the trial court entered its order, we decided *Migdal v. Stamp,* 132 N.H. 171, 176, 564 A.2d 826, 829 (1989), recognizing ex-

ceptions to the fireman's rule for wanton or reckless conduct and for positive acts of misconduct. In light of our decision in *Migdal*, the plaintiffs moved to amend their petition for declaratory judgment and asked the trial court to reconsider the denial of their motion. The plaintiffs were permitted to amend their petition to allege the following:

"That on or about April 4, 1986, an incident took place in Hampton, New Hampshire whereby Plaintiff Joseph C. Akerley received injuries. Mr. Akerley, while serving as a deputy sheriff, arrested a man in the man's motor vehicle following the operator's misconduct elsewhere. The man struggled within his car and actively resisted arrest. The man's negligent, reckless, and wanton acts and his positive acts of misconduct proximately caused injury to Joseph C. Akerley's back."

After granting the plaintiffs' motion to amend, the Superior Court (*Pappagianis*, J.) vacated its earlier order granting summary judgment to the defendants. The defendants filed cross-motions for summary judgment a second time, contending that their policies only covered injuries arising out of "accidents" and that the new allegations of reckless, wanton, or willful misconduct did not fall within their policy definitions of an accident. The Superior Court (*Hampsey*, J.) denied the defendants' motion, finding that the question of whether the injury was caused by an accident was a question of fact. The defendants brought a motion for reconsideration which the Superior Court (*Hampsey*, J.) granted. In granting the motion, the trial court found that the question of whether Officer Akerley's injury arose out of an accident was not one of material fact. The trial court ruled that if the injury arose out of an accident, then the plaintiffs' uninsured motorist claims were barred by the fireman's rule; if the injury was not the result of an accident, then the policies did not provide coverage. In this ruling, the trial court did not reach the issue of whether the alleged injury arose out of or resulted from ownership, maintenance or use of the uninsured vehicle.

On appeal, the plaintiffs contend that the fireman's rule should be abrogated in New Hampshire or, in the alternative, that it does not apply to the facts of this case. The plaintiffs further contend that whether Officer Akerley's injury falls within both policies' definition of "accident" is a question of fact. On cross-appeal, the defendants argue that regardless of whether Officer Akerley's injury arose from an accident, the plaintiffs cannot recover as a matter of law. The

defendants argue that Officer Akerley's injury was not causally connected to "ownership, maintenance or use" of the uninsured motor vehicle.

■ The fireman's rule precludes "a police officer or fireman, both of whom are paid to confront crises and allay dangers created by an uncircumspect citizenry, from complaining of negligence in the creation of the very occasion for their engagement." *England v. Tasker*, 129 N.H. 467, 471–72, 529 A.2d 938, 941 (1987). In *England*, we left open the question whether the rule also applied to willful or wanton conduct. *Id.* at 472, 529 A.2d at 941. We settled this issue in *Migdal* by holding that the fireman's rule applies only "to acts of ordinary negligence," *Migdal*, 132 N.H. at 176, 564 A.2d at 828, and explicitly exempting reckless, wanton, or positive (willful) acts of misconduct from the scope of the rule. *Id.* at 175–76, 564 A.2d at 828.

In *England*, we enunciated the relevant public policy considerations that compel the application of the fireman's rule. The rule supports the principle that societal responsibility is a better, surer, and fairer recourse for a public officer or fireman injured in the line of duty than the possibility of a tort recovery. *England*, 129 N.H. at 470, 529 A.2d at 940. Police officers and firemen are "'paid to confront crises and allay dangers created by an uncircumspect citizenry' . . . ." *Id.* (quoting *Berko v. Freda*, 93 N.J. 81, 86, 459 A.2d 663, 666 (1983)). As such, "it is fundamentally unfair to ask the citizen to compensate . . . public safety officer[s], already engaged at taxpayer expense, a second time for injuries sustained while performing the very service which [they are] paid to undertake for the citizen's benefit." *Id.* at 471, 529 A.2d at 940. A contrary rule might discourage members of the public from requesting assistance from public safety officers for fear of liability. *Id.* at 471, 529 A.2d at 941. We see no reason to set aside these considerations and thus reject the plaintiffs' argument that the rule should be abrogated.

■ We read the plaintiffs' amended petition as alleging that Officer Akerley's injury was proximately caused by three types of conduct: (1) negligent conduct; (2) reckless and wanton conduct, *see* W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 34, at 212 (5th ed. 1984) (claims of willful, wanton, and reckless conduct have generally been treated the same, as an aggravated type of negligence differing in quality from ordinary negligence); and (3) positive (intentional) acts of misconduct. Because of the fireman's rule, we find that the trial court correctly barred the plaintiffs' recovery for an injury that was caused by ordinary negligence. *See Migdal*,

132 N.H. at 176, 564 A.2d at 828. The fireman's rule, however, does not bar the plaintiffs from bringing their other claims. Thus, we must turn to the applicable uninsured motorist coverage provisions and determine which policy, if any, affords coverage on the facts alleged.

█ Generally, uninsured motorist coverage is "designed to provide protection for the motoring public from injuries caused by uninsured . . . motorists and hit-and-run motorists." R. MCNAMARA, 9 NEW HAMPSHIRE PRACTICE, PERSONAL INJURY § 572, at 123 (1988). Hartford's uninsured motorist policy contains the following provision:

> "We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an *accident*. The owner's or driver's liability for these damages *must result from the ownership, maintenance or use* of the uninsured motor vehicle."

(Emphasis added.) Similarly, the uninsured motorist provision of Metropolitan's policy covers the insured's injuries that were "caused by an *accident* and *arising out of the ownership, maintenance or use* of an uninsured . . . vehicle . . . ." (Emphasis added.) Such coverage is not intended to serve as a substitute for comprehensive personal liability insurance. *See* 8C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 5092.55, at 396–97 (1991).

Hartford and Metropolitan argue that Officer Akerley's injury was not sustained as a result of an accident and, moreover, that the injury did not arise out of the use of the uninsured vehicle. Therefore, the threshold issue of coverage under both policies turns on whether an injury allegedly caused by reckless and wanton acts, and positive acts of misconduct falls within the meaning of "accident" and, if so, whether the injury "arose out of" or "resulted from" the suspect's use of the uninsured vehicle.

Pursuant to RSA 491:8-a, the trial court must grant summary judgment when, considering all of the evidence presented in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 300–01, 605 A.2d 208, 210 (1992). We will assume, without deciding, that there was an "accident" on the facts alleged. In order to invoke uninsured motorist coverage under the defendants' policies, however, Officer Akerley's injury must have arisen out of or resulted from the sus-

pect's use of the uninsured vehicle. The defendants' cross-appeal contends that Officer Akerley's injury is not sufficiently connected with the use of the uninsured vehicle to warrant uninsured motorist coverage.

The interpretation of terms in insurance policies is a question of law for this court to determine. *State Farm Mut. Auto. Ins. Co. v. Cookinham*, 135 N.H. 247, 249, 604 A.2d 563, 564 (1992). While we generally interpret ambiguous terms against the insurer, we will not find that a clause is ambiguous only to resolve such contrived ambiguity against an insurer. *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, 123 N.H. 179, 182–83, 459 A.2d 249, 251 (1983). Where there is no ambiguity, we interpret the meaning of terms as would a reasonable person based on more than a casual reading. *Limoges v. Horace Mann Ins. Co.*, 134 N.H. 474, 476, 596 A.2d 125, 126 (1991).

In the present case, we must interpret the term "use" as it pertains to the question of whether a causal connection existed between use of the vehicle and injury to Officer Akerley. "'In determining whether an ambiguity exists, [the court] will look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions.'" MCNAMARA, *supra* § 434, at 8 (quoting *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 764, 435 A.2d 507 (1981)). We construe the term "use" by considering its ordinary meaning and the normal use for which a vehicle is intended. Given "the inherent nature of the automobile, as such," 6B APPLEMAN, *supra* § 4317, at 368, we detect no ambiguity.

Next, we must examine whether Officer Akerley's injury arose out of or resulted from the suspect's use of his vehicle. Generally, a causal connection must exist between the resulting harm and use of the vehicle in order to invoke coverage. 8C APPLEMAN, *supra* § 5092.55, at 393. Hartford requires that the driver's liability for damages "result from . . . use of the uninsured motor vehicle." Metropolitan covers injuries caused by accident only if "arising out of . . . use" of the uninsured vehicle. Under New Hampshire law, this type of clause has been interpreted to mean that injuries "originating from, or growing out of, or flowing from the use" of the vehicle will be sufficient to claim coverage. MCNAMARA, *supra* § 517, at 89. Although proximate causation is not required, a tenuous connection with an automobile is not sufficient to warrant coverage. *See* MCNAMARA, *supra* § 517, at 89.

The plaintiffs argue that Officer Akerley's injury occurred when the suspect struggled and resisted arrest. Even considering the facts in a light most favorable to the plaintiffs, we cannot say that the injury arose out of or resulted from the suspect's use of the vehicle. There is nothing in the record before us that would indicate that the suspect was using his vehicle or behaving as a motorist when Officer Akerley sustained his injury. *See Day v. State Farm Mutual Ins. Co.*, 396 A.2d 3, 5 (Pa. 1978) (court denied coverage because driver was not acting as motorist when he knocked claimant down with his fists). The record does establish, however, that Officer Akerley assisted his partner in trying to forcibly remove the suspect from his parked car and subdue him in the parking lot. As the suspect continued to resist arrest, the officers and the suspect fell to the ground. Although it is unclear whether Officer Akerley's back injury occurred when pulling the suspect out of the vehicle or when they fell in the parking lot, it is clear that the injury was caused by the suspect resisting arrest and not by the suspect using his vehicle. Since it cannot reasonably be said that the injury-causing activity was "originating from, or growing out of, or flowing from the use" of the vehicle, the plaintiff cannot invoke uninsured motorist coverage. *See* MCNAMARA, *supra* § 517, at 89.

■ While it is true that the suspect drove his car to the situs where Officer Akerley sustained his back injury, the vehicle had ceased to be used at the time of the attempted arrest, and the causal link was subsequently broken. *See* A. WIDISS, 1 UNINSURED AND UNDERINSURED MOTORIST INSURANCE, THE COVERAGE § 11.5, at 534, 541 (2d ed. 1990) (courts have concluded that nexus must be more than fact that vehicle transported assailant to altercation scene); *Aetna Cas. & Sur. Co. v. Safeco Ins. Co.*, 163 Cal. Rptr. 219, 223 (Ct. App. 1980) (coverage denied where vehicle is merely locus of incident but has no significant role in causing injury). The fact that the vehicle may have served as the situs of Officer Akerley's injury does not make such use of the vehicle one which would be sufficient to warrant coverage. *See, e.g., Criterion Ins. Co. v. Velthouse*, 751 P.2d 1, 5 (Alaska 1986) (no coverage where injury resulted from insured's negligent use of gun in vehicle, not from use of auto); *National Family Ins. Co. v. Boyer*, 269 N.W.2d 10, 15 (Minn. 1978) (denying coverage since there was no relationship between shooting of gun and use of vehicle for transportation purposes). Moreover, the suspect's earlier firing of a weapon from his car was remote in both time and location with respect to Officer Akerley's injury. Any con-

nection between use of the vehicle and the subsequent altercation causing the injury is too tenuous to warrant coverage. *See* MCNAMARA, *supra* § 517, at 89.

 Thus, we hold as a matter of law that Officer Akerley's injury did not arise out of or result from the ownership, maintenance, or use of the uninsured vehicle. The defendants could properly deny uninsured motorist coverage because the requisite causal connection did not exist. Therefore, we uphold the trial court's order granting defendants' motion for summary judgment.

*Affirmed.*

All concurred.