Hillsborough-northern judicial district
No. 93-115

JAMES AND CAROL CANNON

v.

MAINE BONDING & CASUALTY COMPANY

MAINE BONDING & CASUALTY COMPANY

v.

UNIVERSAL UNDERWRITERS GROUP

March 25, 1994

*Wiggin & Nourie, P.A.*, of Manchester (*Peter E. Hutchins* and *John P. Fagan* on the brief, and *Mr. Hutchins* orally), for James and Carol Cannon.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Eileen Fox* on the brief, and *Julie Ann Boyle* orally), for Maine Bonding & Casualty Company.

*Ouellette, Hallisey, Dibble and Tanguay, P.A.*, of Dover (*Stephen J. Dibble* on the brief and orally), for Universal Underwriters Group.

JOHNSON, J. These declaratory judgment actions, involving issues of automobile insurance coverage, arose after David Castles assaulted James Cannon on Interstate 93. Castles had been driving his employer's car, which was insured by Universal Underwriters Group (Universal Underwriters), while Cannon had been driving his own car, insured by Maine Bonding & Casualty Company (Maine Bonding). The Superior Court (*Hollman*, J.) ruled that Cannon's injuries did not arise out of any use of Castles' employer's car and, therefore, that Universal Underwriters is not obligated to provide Castles with liability coverage and that Maine Bonding is not obligated to provide James and Carol Cannon with uninsured motorist benefits. The Cannons appeal, and we affirm.

For purposes of this appeal, the parties agree to the following. Castles and Cannon were driving in separate cars on Interstate 93 in Manchester when Castles engaged Cannon in a "cat-and-mouse" game, alternatively accelerating and decelerating, and not letting Cannon pass. Castles used certain hostile hand signals to indicate that he wanted Cannon to pull over to the side of the road. Cannon refused and drove closely behind Castles to determine Castles' license plate number. Castles slammed on his brakes, causing Cannon to do likewise and stall his car. The cars came to a stop on the highway without touching. Castles then ran over to Cannon's car, in which Cannon remained seated, smashed the driver's side window with his fist, and punched Cannon. This attack left Cannon with a severe eye injury. The Cannons sued Castles, and these declaratory judgment actions followed.

The narrow issue on appeal is whether the superior court correctly ruled that Cannon's injuries did not arise out of any use of the car Castles was driving. Universal Underwriters' contractual and statutory obligations to provide liability coverage for Castles depend on Cannon's injuries arising out of the use of this car. *See* RSA 259:61, I (1993); RSA 264:20 (1993). Under the Maine Bonding insurance policy, uninsured motorist coverage depends on the same condition.

We recently explained in *Akerley v. Hartford Insurance Group*, 136 N.H. 433, 616 A.2d 511 (1992), that "arising out of" a car's use means "originating from, or growing out of, or flowing from the use." *Id.* at 439, 616 A.2d at 515 (quotation omitted); *see also Union Mut. Fire Ins. Co. v. King*, 113 N.H. 39, 41, 300 A.2d 335, 336 (1973); *Carter v. Bergeron*, 102 N.H. 464, 470–71, 160 A.2d 348, 353 (1960). To warrant coverage, the use need not be the proximate cause of the injuries, but the causal connection between the two must be more than "tenuous." *Akerley*, 136 N.H. at 439, 616 A.2d at 515. For example, in *Akerley*, where a police officer was injured while apprehending a suspect who had been firing a gun from his car, we denied coverage in part because the suspect was not "using his vehicle or behaving as a motorist" *at the time the officer was injured. Id.* at 440, 616 A.2d at 515.

Similarly, at the time of Castles' assault on Cannon, Castles was no longer using his vehicle or acting as a motorist. Thus, under *Akerley*, the causal connection between use and injury here is tenuous. The Cannons counter that Castles used his employer's car to trap Cannon and render him helpless against Castles' attack. This argument, however, ignores the salient point in this fact pattern: Castles brought his employer's car to a stop and *left* it unattended before

hurling his fist through Cannon's car window. Under similar facts, courts in other jurisdictions have come to the same conclusion as did the superior court. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 986, 989 (4th Cir. 1985); *Commercial Union Ins. Co. of New York v. Hall*, 246 F. Supp. 64, 65, 66 (E.D.S.C. 1965); *Detroit Auto. Inter-Ins. Exch. v. Higginbotham*, 95 Mich. App. 213, 215–16, 222, 290 N.W.2d 414, 416, 419 (1980).

In the cases chiefly relied on by the Cannons, the assailant shot the victim *while driving or riding in a moving vehicle. See State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1417 (9th Cir. 1991); *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876, 877 (Minn. 1987); *Wausau Underwriters Ins. Co. v. Howser*, 422 S.E.2d 106, 107 (S.C. 1992). Significantly, two of these cases, *Davis* and *Howser*, specifically distinguish cases such as *Brown* and *Higginbotham*, whose facts so resemble ours. *Davis*, 937 F.2d at 1422; *Howser*, 422 S.E.2d at 108. The conspicuous difference is that in the cases where the courts have denied coverage, "the assailant left his vehicle before assaulting the other party." *Davis*, 937 F.2d at 1422. This is precisely what happened here. We conclude that Cannon's injury did not arise out of Castles' use of his employer's car and, therefore, affirm the superior court's ruling.

*Affirmed.*

All concurred.