Rockingham
No. 95-265

MAUREEN MATARESE

v.

NATIONWIDE MUTUAL INSURANCE COMPANY

August 29, 1996

*Boutin & Solomon, P.A.*, of Londonderry (*Peter M. Solomon* on the brief and orally), for the plaintiff.

*Sulloway & Hollis*, of Concord (*Martin L. Gross* and *Ryan K. Stafford* on the brief, and *Mr. Stafford* orally), for the defendant.

JOHNSON, J. The plaintiff, Maureen Matarese, suffered injuries while on duty as a police officer during an automobile collision with Patricia Lajoie, an uninsured motorist. She sought uninsured motorist coverage from the defendant, Nationwide Mutual Insur-

ance Company, in a declaratory judgment action. The Superior Court (*Goode*, J.) dismissed her petition, ruling that the so-called "fireman's rule" barred her right of recovery against Lajoie. *See England v. Tasker*, 129 N.H. 467, 471–72, 529 A.2d 938, 941 (1987). We affirm.

On March 20, 1991, at approximately 9:00 a.m., the plaintiff was patrolling a sector of Londonderry in her police cruiser. While waiting at a traffic light, she saw a car approach the intersection from another direction "at a high rate of speed." The car, driven by Lajoie, "came to a screeching stop[,] . . . jumped forward again," and came to another stop. The plaintiff noticed a man in the front passenger seat leaning over Lajoie "in a controlling manner"; another man sat in the back. Lajoie made a right-hand turn, again "at a high rate of speed," and pulled into a convenience store parking lot.

The plaintiff noted the car's license plate number as it drove by her. She proceeded to her original destination, a nearby bank, but radioed the police dispatcher for a registration check. She received a response soon after entering the bank parking lot: the license plate number did not match the car. Within moments, the plaintiff drove back to the convenience store "to check out the car." She was concerned, she later testified, about "the safety of the female operator," as well as the erratic operation of the car.

When she arrived at the convenience store, a fuel tanker blocked her path through the parking lot. As she began to drive around it, she saw Lajoie's car coming toward her "at a high rate of speed." Lajoie was sitting behind the wheel, but her head was turned toward the back of the car. The two cars collided before the plaintiff had time to react.

A police accident investigator testified that the collision was caused by Lajoie's inattention, as well as her car's faulty brakes. Lajoie agreed and testified that the man in the back seat threw something at her and asked her a question just before the accident. Similarly, when asked why she stopped so quickly at the intersection where the plaintiff first saw her, she stated: "Well, one thing, the brake didn't work right. But the main reason was the guy next to me was bugging the hell out of me."

After the accident, the plaintiff sought uninsured motorist coverage from the defendant. When the defendant denied her claim, the plaintiff filed this petition for declaratory judgment. The superior court found "that it was Ms. Lajoie's conduct in the first instance that created the circumstance and resultant hazard that required the officer's presence at the scene where the accident occurred."

Consequently, the court ruled, the fireman's rule barred the plaintiff's right to recover against Lajoie and, therefore, her claim for uninsured motorist coverage.

The plaintiff argues that the superior court erred in ruling her right of recovery barred by the fireman's rule. She also contends, however, that the relevant language in her insurance policy is ambiguous and that this ambiguity entitles her to uninsured motorist coverage regardless of the applicability of the fireman's rule. This latter argument, based on her reading of *Green Mountain Insurance Co. v. George*, 138 N.H. 10, 634 A.2d 1011 (1993), does not appear in her notice of appeal, and she has not forwarded to this court any exhibits relating to this issue, such as the insurance contract. Moreover, the plaintiff has not moved to add this question to her notice of appeal. We therefore do not address it. SUP. CT. R. 16(3)(b); *State v. Peterson*, 135 N.H. 713, 714–15, 609 A.2d 749, 750–51 (1992). We focus instead solely on the applicability of the fireman's rule.

Both parties assert that the issue before us is a mixed question of law and fact. We concur and therefore review the superior court's ruling according to the standard set forth in *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 608 A.2d 840 (1992). We uphold the court's ruling unless it is clearly erroneous. *Id.* at 282, 608 A.2d at 848. "If, however, the court misapplies the law to its factual findings, we review the result on appeal independently under a plain error standard." *Id.*

In *England v. Tasker*, 129 N.H. at 472, 529 A.2d at 941, we held that police officers and firefighters may not "complain[] of negligence in the creation of the very occasion for their engagement." *See also Migdal v. Stamp*, 132 N.H. 171, 175, 564 A.2d 826, 828 (1989); *cf.* RSA 507:8-h (Supp. 1995) (effective Jan. 1, 1994). We cited two public policy considerations in support of this holding:

> First, we agree that it is fundamentally unfair to ask the citizen to compensate a public safety officer, already engaged at taxpayer expense, a second time for injuries sustained while performing the very service which he is paid to undertake for the citizen's benefit. . . .
>
> . . . .
>
> Further, fire[fighters] and police [officers] are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparation for their visit cannot reasonably be expected . . . .

*England*, 129 N.H. at 471, 529 A.2d at 940–41 (quotation omitted). We left unanswered whether a public safety officer could recover for "a subsequent independent act of negligence directed toward the . . . officer." *Id.* at 472, 529 A.2d at 941.

■ In *Gould v. George Brox, Inc.*, 137 N.H. 85, 89–91, 623 A.2d 1325, 1328–29 (1993), we explicitly answered this question in the affirmative, holding that a public safety officer may recover for such independent acts of negligence. We explained:

> Society expects its police, firefighters and related employees to respond to those situations which threaten life, safety, and property. In the ordinary course, such instances involve accidents, not the least of which involve automobiles. Many of these can be traced to either a lack of due care on someone's part or conduct by the segment of the citizenry who violate the provisions of the criminal law or other of society's rules.
>
> Common sense tells us that *it is the person whose conduct triggers the response who is immune from liability* under a narrow but enlightened application of the fireman's rule.

*Id.* at 89, 623 A.2d at 1328 (emphasis added).

The plaintiff argues that the superior court's decision must be reversed because it conflicts with our holding in *Gould.* In *Gould*, the plaintiff police officer was directing traffic at a highway construction site when a dump truck operator caused a telephone wire to fall to the ground. *Id.* at 87, 623 A.2d at 1326. The plaintiff then attempted to direct automobiles over the wire. *Id.* at 87, 623 A.2d at 1326–27. Some of the construction company's workers temporarily raised the wire, however, and a motorist ignored the plaintiff's signal to stop. *Id.* at 87, 623 A.2d at 1327. The motorist hit the wire, which hit the plaintiff, knocking him to the ground. *Id.* The plaintiff sued the dump truck operator, the construction company, and the motorist. We concluded that the fireman's rule barred recovery against the dump truck operator, but not against the motorist and the construction company, who committed "subsequent and independent acts" of negligence. *Id.* at 90–91, 623 A.2d at 1328–29. The plaintiff here argues that Lajoie's negligence in colliding with her should also be characterized as a subsequent and independent act.

■ The defendant, on the other hand, contends that the facts of this case more closely resemble those of *Akerley v. Hartford Insurance Group*, 136 N.H. 433, 616 A.2d 511 (1992). In *Akerley*, the

plaintiff deputy sheriff responded to a report that a suspect was firing a gun at people. *Id.* at 435, 616 A.2d at 512. The plaintiff cornered the suspect in his car and suffered injuries while struggling to remove and subdue him. *Id.* The plaintiff sought uninsured motorist coverage from the defendant insurance companies, alleging that his injuries were caused by the suspect's negligence, recklessness, and intentional misconduct. *Id.* at 435, 437, 616 A.2d at 512, 514. We held that the fireman's rule barred the plaintiff's recovery to the extent that his suit was based on a claim of negligence. *Id.* at 437, 616 A.2d at 514.

A review of the record in this case supports the superior court's ruling. Just as the struggle between Officer Akerley and the shooting suspect was directly related to the suspect's initial act of firing his weapon, the collision between the plaintiff and Lajoie was directly related to the conduct the plaintiff first observed at the intersection. As we held in *England v. Tasker*, "the plaintiff was injured while responding in [her] professional capacity to the very type of situation for which [she] was paid and trained to cope." *England*, 129 N.H. at 472, 529 A.2d at 941. Contrary to the plaintiff's assertions in her brief, the collision in the convenience store parking lot was not a result of "happenstance," "fortuity," or "chance," nor were Lajoie's actions in precipitating the crash "separate and distinct from the circumstances and facts that had earlier caught the Plaintiff's attention." Rather, this conduct was an inextricable part of the "negligence which create[d] the occasion for [her] employment." *Migdal*, 132 N.H. at 175, 564 A.2d at 828.

As the record makes clear, the meeting between Lajoie and the plaintiff was no mere coincidence. The reason the plaintiff was at the convenience store was "to check out the car" she had seen earlier, for it was Lajoie's behavior at the intersection which prompted the plaintiff to pursue further investigation. Accordingly, the plaintiff's presence at the convenience store was causally linked to Lajoie's conduct, and the negligent act was a part of the occasion which triggered the plaintiff's response.

The plaintiff was injured while responding to Lajoie's negligent behavior. Public safety officers may not "complain[] of negligence in the creation of the very occasion for their engagement." *England*, 129 N.H. at 472, 529 A.2d at 941. Because the plaintiff suffered her injuries "while performing the very service which [she] is paid to undertake for the citizen's benefit," *id.* at 471, 529 A.2d at 940, we

hold that the superior court properly ruled her right of recovery against Lajoie barred by the fireman's rule.

*Affirmed.*

HORTON, J., with whom BROCK, C.J., joined, dissented; the others concurred.

HORTON, J., dissenting: We confirmed the viability of the fireman's rule in this jurisdiction based on public policy considerations. *England v. Tasker*, 129 N.H. 467, 529 A.2d 938 (1987); *see Akerley v. Hartford Ins. Group*, 136 N.H. 433, 437, 616 A.2d 511, 513 (1992). As stated by the majority, the rule provides that public safety officers may not "complain[] of negligence in the creation of the very occasion for their engagement." *England*, 129 N.H. at 472, 529 A.2d at 941. In *Gould v. George Brox, Inc.*, 137 N.H. 85, 623 A.2d 1325 (1993), we called for a "narrow but enlightened application of the fireman's rule," *id.* at 89, 623 A.2d at 1328, and recognized that every act of negligence damaging a public safety officer, while the officer wears his badge, is not covered by the fireman's rule, *id.* at 89–90, 623 A.2d at 1328. This requires us to determine whether the "very occasion" for the engagement is involved in the negligent act. We recognized in *Gould* that there can be damaging acts of negligence in an "on duty" situation that lack the required nexus to the call to duty, and thus are not subject to the fireman's rule. *Id.*

The majority finds that nexus and holds that the convenience store accident arose from the very occasion that gave rise to the call. Two bases for this finding are evident in the majority opinion: the fact that the negligent actor and the perpetrator triggering the response are one and the same, and the conclusion that the negligent actor's actions in the convenience store parking lot were an inextricable part of the "negligence" which created the occasion for the officer's employment.

As to the former reason we did say in *Gould* that "[c]ommon sense tells us that it is the person whose conduct triggers the response who is immune from liability under a narrow but enlightened application of the fireman's rule." *Id.* at 89, 623 A.2d at 1328. Although this would seem to eliminate from application of the rule those negligent actors at the duty scene who did not trigger the response, it does not mean that all negligent acts of the triggering party are necessarily the very occasion for the response. *Gould*, itself, points out that acts of a non-triggering party would not be covered by the rule and states, "Nor would [policemen] be barred from recovery if the individual responsible for their presence engaged in subsequent acts of negligence or misconduct once the

officer was on the scene." *Id.* at 90, 623 A.2d at 1328 (quotation omitted). Thus, if the negligent act is the deed of the triggering party, but the negligent act is neither the very occasion for the response, nor directly connected thereto, then the rule does not come into play.

As to the latter justification upon which the majority relies for application of the rule, the inextricable linking of the negligent act with the "negligence" which created the occasion for employment, I respectfully disagree with the majority's conclusion.

The proper analysis for determination of the rule's applicability, in this case, is to measure whether the negligent act is a true part of the very occasion triggering the response. Where the conduct at the intersection triggered the response, injury during immediate pursuit or contemporary arrest would be within the rule. When the police officer leaves the scene, conducts another errand at the bank, engages in off-site investigation, and returns, there must be some causal link between the accident and the response. I perceive no real difference between this accident and one with a third party in the bank parking lot. There is no real nexus between the accident and the very occasion triggering the response.

Nor would this analysis violate public policy. The accident is hardly the crisis or danger the policeman is paid to confront. It would not be unfair to compensate the policeman for the injuries sustained. We would not expect the negligent actor to be put off from seeking police assistance because of a threat of motor vehicle negligence liability. *See Akerley*, 136 N.H. at 437, 616 A.2d at 513.

I would reverse the trial court's dismissal of the declaratory judgment petition and remand for further proceedings.

BROCK, C.J., joins in the dissent.