Hillsborough-northern judicial district
No. 95-129

THOMAS J. WALSH

v.

AMICA MUTUAL INSURANCE COMPANY

October 29, 1996

*McDowell & Mekeel, P.A.*, of Manchester (*Richard J. Walsh* and *Mark D. Morrissette* on the brief, and *Mr. Morrissette* orally), for the plaintiff.

*Sullivan & Gregg, P.A.*, of Nashua (*Richard A. Mitchell* on the brief and orally), for the defendant.

## MEMORANDUM OPINION

THAYER, J. The defendant, Amica Mutual Insurance Company (Amica), appeals an order of the Superior Court (*Abramson*, J.) upholding an arbitration award to the plaintiff, Thomas J. Walsh. Amica argues that the arbitrators were plainly mistaken in concluding that the plaintiff's injuries arose out of the use of a motor vehicle under the terms of his insurance policy. We reverse.

The essential facts are not in dispute. On December 3, 1991, the plaintiff drove to the Amoskeag Bank on South Main Street in Bedford to pick up his girlfriend, Natasha Fortune. When he arrived, the plaintiff saw Fortune and her estranged husband, John Durant, sitting in Durant's car. While Fortune and Durant talked, Durant repeatedly drove his car toward the plaintiff's car until the plaintiff moved away. When Fortune eventually stepped out of Durant's car, Durant got out, leaned over the windshield and aimed a gun at the plaintiff, apparently using the windshield to steady the weapon. As the plaintiff drove away, Durant fired several shots at the plaintiff, hitting him numerous times.

After Durant's automobile insurance carrier, Allstate Insurance Company, denied coverage to the plaintiff, he filed a claim under his

own policy with Amica. Amica denied coverage based upon the uninsured motorist provisions in the plaintiff's policy, which provide that Amica will pay damages when an insured can "recover from the owner or operator of . . . [a]n uninsured motor vehicle . . . because of bodily injury sustained by an insured and caused by an accident; and . . . [t]he owner's or operator's liability for these damages [arises] out of the ownership, maintenance or use of the uninsured motor vehicle . . . ."

Pursuant to the terms of the plaintiff's policy, the coverage issue was submitted to arbitration. A majority of the arbitration panel found that coverage was required under the policy. Following this ruling, Amica filed a petition to correct arbitration in the superior court, and the plaintiff filed a petition to confirm arbitration award. The superior court affirmed the panel's ruling, and this appeal followed.

Under RSA 542:8 (1974), the superior court has the authority to correct or modify an arbitrator's ruling upon a showing of "plain mistake" by the arbitrator. *See Masse v. Commercial Union Ins. Co.*, 134 N.H. 523, 525, 593 A.2d 1164, 1165 (1991). "[T]he words 'plain mistake' refer both to mistakes of fact and mistakes of law." *N.H. Ins. Co. v. Bell*, 121 N.H. 127, 129, 427 A.2d 27, 28 (1981). An award may be set aside "on the ground that the arbitrators were mistaken in point of law" if it is clear "that they would not have made such an award had they known what the law was." *Id.* (quotation omitted).

In this case, Amica contends, among other things, that the arbitration panel was plainly mistaken in concluding that the plaintiff's injuries arose out of the use of an uninsured motor vehicle. "[A]rising out of" an automobile's use means "originating from, or growing out of, or flowing from the use." *Cannon v. Maine Bonding & Cas. Co.*, 138 N.H. 365, 366, 639 A.2d 270, 271 (1994) (quotation omitted). The term "use" refers to use of the automobile in its inherent nature as a vehicle. *See National Farmers Union Property & Cas. Co. v. Gibbons*, 338 F. Supp. 430, 434 (D.N.D. 1972). To warrant coverage, then, there must be more than a tenuous connection to the automobile; the operator must have been "using his vehicle or behaving as a motorist" at the time the plaintiff was injured. *Akerley v. Hartford Ins. Group*, 136 N.H. 433, 440, 616 A.2d 511, 515 (1992).

Durant's weapon was the proximate cause of the plaintiff's injuries, and we cannot say Durant was using his vehicle or behaving as a motorist when he shot at the plaintiff. Though Durant apparently "used" the vehicle to steady his gun on the windshield,

this is not a normal use for which a vehicle is intended; consequently, any connection to the plaintiff's injuries is too tenuous to warrant coverage. *See id.; Norgaard v. Nodak Mutual Insurance Co.*, 201 N.W.2d 871, 874 (N.D. 1972). As one court has explained, "[a]n assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the *normal* use of a motor vehicle." *Detroit Auto. Inter-Ins. Ex. v. Higginbotham*, 290 N.W.2d 414, 419 (Mich. Ct. App. 1980). To the extent the arbitrators believed the law to be otherwise, they were plainly mistaken.

*Reversed.*

HORTON, J., did not sit; the others concurred.