Fennell v. Commercial Union Ins.          CV-96-18-SD    02/26/97

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Ronald Fennell;
Fennell Enterprises, Inc.


_____v.                                   Civil No. 96-18-SD


Commercial Union Insurance Company;
Christine A. Irving


OPINION AND ORDER


This is a declaratory judgment action, the purpose of which
is determination of the coverage of a certain insurance policy
issued by Commercial Union Insurance Company (CU) to Kenneth
Cabral.  The incident which gives rise to the action is a
September 10, 1994, motor vehicle accident which occurred while
Cabral's vehicle was being operated by Ronald Fennell.

For reasons hereinafter set forth, the court finds and rules
that the CU policy affords coverage by reason only of the appli-
cation of and up to the $25,000 limit of the Financial Responsi-
bility Law of New Hampshire.  New Hampshire Revised Statutes
Annotated (RSA) 264.[1]

---

[1]RSA 259:61 defines a New Hampshire "motor vehicle liability
policy" in relevant part as requiring limits of $25,000 on
account of injury to or death of any one person.

## Background[2]

At times relevant to these proceedings, Cabral operated an auto sales and salvage business in Kingston, New Hampshire.[3] Ronald Fennell sold new and used automobile towing equipment in East Hampstead, New Hampshire.[4]

Cabral and Fennell were casual acquaintances who had met while attending "stock car" races. In 1994, however, Cabral entered into an agreement to purchase a new car carrier from Fennell. This vehicle was scheduled to be delivered in early September of 1994.

Production delays interfered with the delivery of this vehicle, and in early September 1994 Cabral had need for use of a car carrier in the course of his business. Accordingly, he arranged to borrow a car carrier from Fennell's current stock.

On or about September 8, 1994, Cabral drove his 1983 S-10 Chevrolet pickup to Fennell's vehicle lot. He parked his vehicle in the rear of the lot and left it unlocked with the keys on the

---

[2]The facts found herein come from stipulations of the parties and from the evidence presented at the hearing before the court on February 12, 1997.

[3]The CU policy was issued to "Kenneth Cabral d/b/a Ken's Auto Sales and Salvage". Defendants' Exhibit A. For simplicity, this Opinion refers to Cabral in the singular.

[4]The pleadings herein refer to Ronald Fennell and Fennell Enterprises, Inc. Again, for simplicity, the court refers to Fennell in the singular.

floor.[5] He removed his plates from the vehicle and then drove the borrowed car carrier to Keene, New Hampshire, to transact his business.

There was no communication of any kind between Cabral and Fennell as to the use Fennell might make of the pickup. Cabral expected that the truck might be moved on Fennell's lot, but he did not anticipate it would be operated on a public highway.

On September 10, 1994, although Fennell had a number of other vehicles available on his lot, he decided to use Cabral's pickup to make a trip to the bank in the course of his business.[6] Accordingly, he put his own transporter plates on the pickup and drove it to the bank. On the return trip, he was involved in an accident. The result has been litigation brought in this court against Fennell by the estate of Robert Irving.

This declaratory judgment action has been brought in Fennell's name and behalf by counsel whose fees are being paid by Seaco Insurance Company, the purported "excess" carrier of Fennell. The claim made is that the CU policy must provide primary coverage for the fatal accident of September 10, 1994. CU denies that its policy provides any coverage for the accident.

---

[5]The court finds that the Cabral vehicle did not block the exit from the Fennell lot, although its position might require its movement to access some other vehicles located on said lot.

[6]Fennell was traveling to the bank to procure funds for a person who had just made a delivery to his business.

Discussion

The Cabral vehicle was a "covered auto" within the meaning of the CU policy. That policy described Cabral as an "insured" for "any covered auto," and it extended coverage to "anyone else while using with [Cabral's] permission a covered auto" owned by Cabral. Defendants' Exhibit A, Garage Coverage Form p. 2, Section II--Liability Coverage, A.1. Who Is An Insured, a.(1), (2).

Excepted from such permissive use, however, is "someone using a covered auto while he . . . is working in a business of selling, servicing, repairing, parking, or storing 'autos' unless that business is [Cabral's] 'garage operations.'" Id. at (2)(c).

Fennell argues that this policy language is ambiguous, invoking the rule that ambiguous provisions are construed against an insurer. Trombly v. Blue Cross/Blue Shield, 120 N.H. 764, 771, 423 A.2d 980, 985 (1980). While a term is ambiguous if the contracting parties could reasonably disagree about its meaning or application, Smith v. Liberty Mutual Ins. Co., 130 N.H. 117, 122, 536 A.2d 164, 166 (1987), the court will not force an ambiguity simply to resolve it against an insurer. Akerley v. Hartford Ins. Group, 136 N.H. 433, 439, 616 A.2d 511, 514 (1992).

The meaning of the terms of the insurance policy is based on a test which takes the plain and ordinary meaning of the policy words in context and construes them as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole. High Country Associates v. New

4

Hampshire Ins. Co., 139 N.H. 39, 41, 648 A.2d 474, 476 (1994). Thus viewed, the CU policy plainly excepts from coverage the use of Cabral's pickup by anyone who lacks permission to operate it or by a permissive user if his use of such vehicle occurs while he is working in a business of selling, servicing, repairing, parking, or storing "autos". The court finds and rules that there is no ambiguity in the CU policy which requires that it be construed against CU.[7]

The court first turns its attention to whether, without consideration of the possible application of RSA 264, Fennell was entitled to coverage under the CU policy while operating the Cabral pickup on September 10, 1994. Contrary to Fennell's contentions, the court finds that AMICA Mutual Ins. Co. v. Zinck, 130 N.H. 357, 361, 540 A.2d 1227, 1230 (1988), properly read, holds that, regardless of the insurance policy language at issue, the "totality of circumstances" applies only to consideration of coverage where RSA 264 comes into play. Accordingly, the court makes such findings as reasonably can be made on the evidence presented. Id.

When Cabral left his pickup without registration plates of any kind attached thereto, Fennell could properly assume entitlement to move it about his lot as needed to move other vehicles.

---

[7]The court further finds and rules that the burden of proof in this action rests on CU pursuant to the provisions of RSA 491:22-a.

5

But, with other vehicles under his control available on the lot, Fennell could not reasonably assume that he had permission to operate the vehicle off such lot on the public highway.

Additionally, one is engaged in work or working when he is engaged in any form of physical or mental exertion, or both combined, for the attainment of some object other than recreation or amusement. BLACK'S LAW DICTIONARY at 1605 (6th ed. West 1990). In driving to and from the bank on September 10, 1994, Fennell was procuring funds to pay the expenses of one who had made a delivery to his place of business. Such trip, the court finds and rules, equates with working in Fennell's business of auto sales and service, and clearly falls within the exception of the CU policy.

Turning to the applicability of the New Hampshire Financial Responsibility Law, RSA 264, a different outcome is mandated. Section 18, I, of the statute makes absolute the liability of a motor vehicle insurer on the occurrence of an accident, and section III thereof removes the defenses of "violation of exclusions, conditions, other terms, or language contained in the policy," together with "unauthorized or unlawful use of the vehicle," with certain exceptions not here applicable.[8] Therefore, such defenses are not available to defend or avoid the

_____

[8]RSA 264:18, VI, sets forth such exceptions as denying coverage where the vehicle is "converted with the intent to wrongfully deprive the owner of his property therein."

6

policy within the $25,000 limits of liability established by RSA

259:61. <u>Id.</u>

Accordingly, analysis of the issue of coverage of the CU

policy where RSA 264 is in play must be had under the "totality

of the circumstances." <u>Government Employees Ins. Co. v. Johnson</u>,

118 N.H. 899, 902, 396 A.2d 331, 333 (1978). So construed, "even

where the actual operation giving rise to the insurer's liability

was clearly outside the scope of permission," <u>id.</u> at 903, A.2d at

333, the application of RSA 264 mandates the finding, herein

made, that the CU policy must provide coverage for the September 10, 1994, accident up to the minimum statutory requirements

of $25,000.

Finally, the court considers whether, as he claims, Fennell

is entitled to an award of attorney's fees pursuant to RSA

491:22-B.[9] As previously outlined, it is undisputed that

Fennell's fees in this action are being paid by Seaco Insurance

Company.

The remedial statute designed to protect consumers against

wrongful refusal of insurance companies to provide coverage, RSA

491:22-b specifically limits the right to reimbursement to

insured persons, not insurers. <u>Liberty Mutual Ins. Co. v. Home</u>

<u>Ins. Indemnity Co.</u>, 117 N.H. 269, 271-72, 371 A.2d 1171, 1173-74

---

[9]RSA 491:22-b provides, "In any action to determine coverage of an insurance policy pursuant to RSA 491:22, if the insured prevails in such action, he shall receive court costs and reasonable attorneys' fees from the insurer.

(1977). In the instant case, the insured person has incurred no fees, as they are being paid by his insurer. Accordingly, Fennell is not entitled to any award of fees pursuant to RSA 491:22-b.

## Conclusion

The court finds and rules that CU is not obligated to provide coverage under its policy to Ronald Fennell, with the exception that application of the Financial Responsibility Law of New Hampshire, RSA 264, mandates that such coverage be provided up to the minimum statutory limits of $25,000. No attorney fees are to be awarded Fennell pursuant to RSA 491:22-b.

The foregoing narrative opinion comprises the findings and rulings of the court required by Rule 52(a), Fed. R. Civ. P. All requests for findings and rulings and rulings not hereinabove inferentially granted are herewith denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 26, 1997

cc:    Doreen F. Connor, Esq.
       Andrew D. Dunn, Esq.
       Richard A. Freedman, Esq.
       Marc R. Scheer, Esq.

8