Merrimack
No. 2000-422

## PRO CON CONSTRUCTION, INC.
### D/B/A PRO CON CONSTRUCTION COMPANY
### v.

## ACADIA INSURANCE COMPANY

Argued: November 7, 2001
Opinion Issued: March 5, 2002
Modified: March 13, 2002

*Law Offices of John B. Schulte*, of Manchester (*Caroline K. Delaney* on the brief and orally), and *Stebbins, Lazos & Van Der Beken, P.A.*, of Manchester (*Henry B. Stebbins* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *James R. Fox* on the brief, and *Mr. Dunn* orally), for the defendant.

DUGGAN, J. The defendant, Acadia Insurance Company (Acadia), appeals a Superior Court (*Manias*, J.) order granting summary judgment in favor of the plaintiff, Pro Con Construction, Inc. (Pro Con). We reverse and remand.

In 1993, Oracle Corporation hired Pro Con to manage the construction of its facility in Nashua. Pro Con hired several subcontractors for the project, including Decorative Concepts, an interior painting contractor. During the project, Decorative Concepts carried a commercial general liability policy issued by Acadia that contained an additional insured endorsement. This endorsement provides:

> WHO IS AN INSURED is amended to include as an insured any person or organization for whom you are performing operations if you and such person or organization have agreed in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.

(Emphasis added.)

In February 1997, a Decorative Concepts employee was allegedly injured when he slipped and fell on an icy sidewalk while on his way from his work area to a coffee truck parked on the site's lot. The employee and his wife thereafter brought suit against Pro Con, claiming that Pro Con negligently failed to keep the sidewalk clear of snow and ice. Pro Con requested indemnification under the policy issued by Acadia. Acadia denied Pro Con's request for coverage, asserting that the circumstances giving rise to the employee's claim do not trigger coverage under the additional insured endorsement. Pro Con then filed this petition for declaratory judgment in superior court seeking a determination of coverage. *See* RSA 491:22 (1997).

Acadia and Pro Con filed cross-motions for summary judgment. After a hearing, the superior court ruled that the language providing coverage for liability arising out of Decorative Concepts' "'ongoing operations' reasonably informed Pro Con that the policy would cover a Decorative Concepts employee injured during an on-site break from his assigned task." Therefore, the superior court granted Pro Con's motion for summary judgment and denied Acadia's motion for summary judgment. This appeal followed.

On appeal, Acadia argues the superior court erred in ruling that the policy provided coverage to Pro Con as an additional insured in this case. Because the parties do not dispute any material facts, we need only determine whether Pro Con was entitled to judgment as a matter of law. *N.E. Tel. & Tel. Co. v. City of Rochester*, 144 N.H. 118, 120 (1999). We review the superior court's application of law to the facts *de novo*. *Id.*

Our analysis begins with an examination of the insurance policy language. The interpretation of insurance policy language, like any contract language, is an issue of law for the court to decide. *Allstate Ins. Co. v. Armstrong*, 144 N.H. 170, 172 (1999). We look to the plain and ordinary meaning of the policy's words in context, *Concord Gen. Mut. Ins. Co. v. Mitchell*, 138 N.H. 229, 231 (1994), "and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole," *Deyette v. Liberty Mut. Ins. Co.*, 142 N.H. 560, 561 (1997) (quotation omitted).

■ The policy language at issue here is the portion of the additional insured endorsement that provides coverage to "an additional insured only with respect to liability arising out of your ongoing operations performed for that insured." The phrase "arising out of" has been interpreted as meaning "originating from or growing out of or flowing from." *Allstate Ins. Co. v. Crouch*, 140 N.H. 329, 332 (1995) (quotation omitted). Thus, to warrant coverage arising out of Decorative Concepts' ongoing operations performed for Pro Con, the ongoing operations need not have been the proximate cause of the injuries but the causal connection between the two must be more than tenuous. *See Cannon v. Maine Bonding & Cas. Co.*, 138 N.H. 365, 366 (1994). This means some causal nexus must link Decorative Concepts' ongoing operations and the injuries before coverage under the additional insured endorsement is triggered. While the causal connection need not be "proximate" as that term is used in the more demanding evidentiary area of tort law, the causal connection must still exist. *See Akerley v. Hartford Ins. Group*, 136 N.H. 433, 439-40 (1992). Acadia contends that in this case the only connection between the injuries and Decorative Concepts' ongoing operations is the fact that the injured

person was a Decorative Concepts employee. This connection, Acadia asserts, is too tenuous to warrant coverage.

■ Decorative Concepts' ongoing operations consisted of interior painting. The injuries did not occur while the employee was engaged in any task related to Decorative Concepts' painting operations, *cf. Merchants Ins. Co. of New Hampshire, Inc. v. USF&G*, 143 F.3d 5, 9 (1st Cir. 1998) (concluding coverage warranted when subcontractor's employee injured while performing task assigned to subcontractor), or near Decorative Concepts' painting operations. Therefore, no nexus exists between the painting operations and the injuries, and thus the required causal connection between the injuries and Decorative Concepts' painting operations does not exist.

■ Pro Con contends that the policy language can be reasonably interpreted to include all claims that would not have arisen "but for" the employee's presence on the general contractor's premises. *See, e.g., Shell Oil Co. v. AC & S, Inc.*, 649 N.E.2d 946, 951-52 (Ill. App. Ct. 1995) (concluding injuries "arose out of" subcontractor's work when employee injured while walking from work-site to work-trailer because "[t]he injuries would not have occurred 'but for' [the plaintiff's] employment by [the subcontractor] and [the subcontractor's] presence on the [general contractor's] premises"). This interpretation, however, is inconsistent with our longstanding interpretation of the phrase "arising out of." *See, e.g., Union Mut. Fire Ins. Co. v. King*, 113 N.H. 39, 41 (1973) (interpreting "arising out of" to require less than proximate cause, but more than a tenuous causal connection); *Akerley*, 136 N.H. at 439 (same). Thus, a reasonable person in Pro Con's position would not expect coverage for all claims that would not have arisen "but for" a subcontractor's employee's presence on the general contractor's premises.

Because no causal connection between the injuries in this case and Decorative Concepts' painting operations exists, we reverse the trial court's grant of summary judgment in favor of Pro Con.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, J., sat for oral argument but did not take part in the final vote; DALIANIS, J., concurred; NADEAU, J., dissented.

NADEAU, J., dissenting. I agree with the majority that to find coverage in this case, Decorative Concepts' "ongoing operations need not have been the proximate cause of the injuries but the causal connection between the

two must be more than tenuous." I conclude, however, that the facts before us satisfy that test.

Although the majority states that the test requires only "some causal nexus" between the injuries and Decorative Concepts' operations, in purporting to apply the test, it actually requires a much stronger causal connection. The majority states that "[t]he injuries did not occur while the employee was engaged in any task related to Decorative Concepts' painting operations, or near Decorative Concepts' painting operations," and therefore concludes that the "required causal connection between the injuries and Decorative Concepts' painting operations does not exist." (Citation omitted.) Applying existing case law to the facts here, however, leads me to the opposite conclusion.

Citing similar cases from a number of jurisdictions, the court in *Admiral Insurance Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 454 (Tex. App. 1999), summarized:

> The majority view of these cases is that for liability to "arise out of operations" of a named insured it is not necessary for the named insured's acts to have "caused" the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.

Thus, the *Admiral* court found a sufficient causal connection where "the accident occurred while [the named insured] was performing its operations, *i.e.*, [the named insured's] employee was present for the purpose of maintaining and repairing [the additional insured's] facilities." *Id.*

Coverage has been found where, as here, the named insured's employee becomes injured due to a dangerous condition on the premises. Thus, the court in *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1110, 1106 (5th Cir. 1991), found coverage with respect to "operations performed by or for the named insured," where an employee of the named insured, while performing work on the additional insured's premises, "allegedly slipped on algae that had formed around a leaking fire hydrant and seriously injured himself."

Furthermore, covered injuries have not been restricted to those sustained in the actual performance of the employee's work as distinguished from preparatory or subsequent activities. For instance, in *McCarthy Brothers Co. v. Continental Lloyds Insurance Co.*, 7 S.W. 3d 725 (Tex. App. 1999), the employee fell on a "muddy, slippery" fifty-five to sixty foot incline that the employees "were required to traverse ... to

retrieve electrical equipment necessary for their work." *Id.* at 727 (quotations omitted). Similarly, in *Highland Park Shopping Village v. Trinity Universal Insurance Co.*, 36 S.W.3d 916, 917, 917 n.2 (Tex. App. 2001), an employee sued for injuries sustained on an allegedly unsafe "Man Lift," a conveyor belt-like device used to move parking garage employees between floors. The injured employee was sent by his employer, the named insured, to do plumbing work on the premises of the additional insured, Highland Park Shopping Center. *Id.* at 917. The employee "borrowed a ladder from Highland Park to use in his work. After completing the job [the employee] returned the ladder to the Highland Park garage basement and used the Man Lift to reach his car, parked outside the garage." *Id.* The court found that the employee's injuries arose out of the named insured's work and that Highland Park was therefore covered as an additional insured. *Id.* at 918.

In the context of workers' compensation, and in interpreting a related exclusion from a general liability policy, we have held that an injury arises in the course of employment if "it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden." *Gagnon v. N.H. Ins. Co.*, 133 N.H. 70, 75-76 (1990) (quotation omitted). In the instant case, the injured employee alleged in his suit against Pro Con that he was on Oracle's "premises while in the course of his employment." The trial court found it was undisputed that the employee "slipped and fell on a sidewalk at the Oracle facility while on his way to a coffee truck located in the parking lot." I have little difficulty concluding from the evidence that taking a coffee break on the work premises is an activity reasonably expected and not forbidden. Thus, the injury-producing activity was within the scope of employment.

By logical extension, the injury-producing activity was also related to the employer's operations. In short, the employee here "was injured while present at the scene in connection with performing the named insured's business." *Admiral*, 988 S.W.2d at 454. I would conclude, therefore, that Pro Con was covered as an additional insured under Decorative Concepts' policy. For that reason, respectfully, I dissent.