Rockingham
No. 2009-169

KIMBERLY BALAMOTIS

v.

H. DEXTER HYLAND, II d/b/a STATE FARM AGENT

Argued: November 4, 2009
Opinion Issued: March 10, 2010

*Thomas Morgan*, of Salem, on the brief and orally, for the plaintiff.

*Bouchard, Kleinman & Wright, P.A.*, of Hampton (*Sabin R. Maxwell* and *Kenneth G. Bouchard* on the brief, and *Mr. Maxwell* orally), for the defendant.

HICKS, J. The plaintiff, Kimberly Balamotis, appeals a decision of the Superior Court (*McHugh*, J.) granting summary judgment to the defendant, H. Dexter Hyland, II d/b/a State Farm Agent, in this action alleging that he underinsured the plaintiff's home. We reverse and remand.

The following facts are either recited in the trial court's order or are supported by the record. The plaintiff's home suffered extensive damage in a fire that occurred on July 27, 2005. The plaintiff had a homeowner's insurance policy through State Farm Fire and Casualty Company (State Farm). The policy's stated limits of liability included coverage on the dwelling of up to $343,000 with a "Dwelling Extension" of up to $34,340.

On November 22, 2005, the plaintiff executed a proof of loss making a claim for, *inter alia*, $675,000 for damage to the building. In July 2006, the plaintiff sued State Farm for failing to pay under the policy. The plaintiff and State Farm eventually settled, and on January 19, 2007, the plaintiff executed a second proof of loss and a release. The proof of loss stated that both the actual cash value and the replacement cost of the building at the time of loss were $357,839.20. The total amount claimed in the proof of loss was $447,340.90, which included the cash value of the building's contents and a specified amount for loss of use, in addition to the claimed value of the building. The release provided:

> IN CONSIDERATION of the sum of Four Hundred Forty seven Thousand Three Hundred Forty and 90/100 Dollars ($447,340.90) and other good and valuable considerations to me paid, the receipt whereof is hereby acknowledged, I, Kim Balamotis (being of lawful age) do hereby release and forever discharge State Farm Insurance Companies, its heirs, administrators, executors, successors and assigns, from any and all action, causes of action, claims and demands whatsoever for, upon or by reason of any damage, loss or injury and all consequential damage, which heretofore have been or which hereafter may be sustained by me in consequence of a fire loss which occurred on July 27, 2005.
>
> IT BEING FURTHER AGREED AND UNDERSTOOD, that the payment of said amount is not to be construed as an admission

of liability, but is a compromise of a disputed claim and that this release is executed in full settlement and satisfaction of rights of the undersigned under policy number 29-J022-618 arising out of said claim above referenced.

In July 2008, the plaintiff instituted this action against the defendant, asserting claims in contract and in tort. *Cf. University Nurs. Home v. Brown & Assoc.*, 506 A.2d 268, 271 (Md. Ct. Spec. App.) (noting that "[a]lthough essentially contractual because the tort is derived from a contractual relation, the claim against an insurance agent for failure to procure requested coverage is a hybrid of both tort and contract principles"), *cert. denied*, 510 A.2d 260 (Md. 1986). We note that on appeal, however, the plaintiff refers to her action solely as one in tort. The writ averred, in essence, that the plaintiff purchased the insurance on her property through the defendant to cover a new residence then being constructed; that the plaintiff arranged through the defendant to purchase an appropriate amount of insurance; that during construction, the plaintiff "specifically questioned the defendant about the adequacy of insurance coverage and was advised by the defendant that the insurance coverage was adequate"; that the defendant advised the plaintiff that "he would review the premises and make appropriate insurance adjustments so that the plaintiff would be fully insured"; and, that despite such assurances, "the defendant did not review or otherwise correct what the plaintiff recognized as being underinsured."

The defendant moved for summary judgment, arguing essentially that: (1) as an exclusive agent of State Farm, he was covered under the release or proof of loss filed by the plaintiff; and (2) the plaintiff's submission of a proof of loss for an amount less than the available coverage precludes her recovery in this action. The trial court found both grounds "meritorious," concluding:

> If the plaintiff truly believed that the amount that she was settling for was inadequate, then she had an affirmative obligation to exclude from any release or proof of loss any future claim that she might make against her agent. . . . It would in fact now be disingenuous to attempt to obtain more money from State Farm through its exclusive agent for this fire loss.

On appeal, the plaintiff argues that the trial court erred in granting summary judgment for the defendant based upon the release because her tort action against the defendant "is a separate and distinct action from the [prior] contract action" against State Farm, and because the defendant is not named in the release. The plaintiff also argues that the trial court erred in granting summary judgment for the defendant based upon the proof of

loss because, *inter alia*: (1) the court did not allow for explanation of an evidentiary admission; and (2) introduction of settlement evidence is prohibited by New Hampshire Rule of Evidence 408.

In an appeal of a grant of summary judgment, we employ the following standard of review:

> [W]e consider the affidavits, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. We review the trial court's application of the law to the facts *de novo*.

*Bates v. Vt. Mut. Ins. Co.*, 157 N.H. 391, 394 (2008) (citations omitted).

We first address the release. The plaintiff's initial contention, that her suit against the defendant is "a separate and distinct action" from her prior contract action against State Farm, does not appear to be disputed, as the defendant states in his brief that "it is unquestioned that [the plaintiff] alleges a distinct cause of action against" him. Nevertheless, we address this issue as it is relevant to our discussion of whether the release operates as a matter of law to bar this action.

■ We agree with the cases cited by the plaintiff, *University Nursing Home* and *Clear-Vu Packaging v. National Union Fire Insurance Co.*, 434 N.E.2d 365 (Ill. App. Ct. 1982), that a claim against an insurance agent for failure to procure insurance as instructed by the insured is separate and distinct from a claim against the insurer for payment under the policy. As stated in *University Nursing Home*: "Two separate wrongs were alleged . . . : [the insurer's] failure to pay the damages claimed under the inadequate insurance contract as written and [the agent's] failure to procure insurance adequate to cover the entire loss. . . . Clearly, these would give rise to two separate damage claims." *University Nurs. Home*, 506 A.2d at 276. To the same effect is *Clear-Vu Packaging*:

> A suit for failure to pay under a policy of insurance is one founded on breach of contract. The alleged failure of [the insurer] to pay on the insurance policy caused injury to plaintiffs that was separate and distinct from the injury which resulted in [the broker's] alleged failure to procure a policy in conformance with plaintiffs' request.

*Clear-Vu Packaging*, 434 N.E.2d at 368 (citation omitted).

■ One implication of the insurer and agent causing separate and distinct injuries is that they cannot be considered joint tortfeasors, as their

conduct did not cause a "single, indivisible harm." *Tiberghein v. B.R. Jones Roofing Co.*, 156 N.H. 110, 116 (2007) (quotation omitted); *see Clear-Vu Packaging*, 434 N.E.2d at 368 (insurer and agent not joint tortfeasors on claims related to inadequate insurance policy). While the defendant repeatedly points out that all of the plaintiff's damages arise from the same fire loss, distinct portions of those damages are attributable to State Farm's and the defendant's separate alleged wrongs. In other words, State Farm's liability for failure to pay under the policy extends only to the policy limits, and the plaintiff avers that she settled for those limits as she understood them to be. The defendant's alleged liability for failure to adequately insure the property theoretically encompasses the portion of the plaintiff's damages from the fire loss that were not covered under the policy; in other words, assuming that the plaintiff's actual damages exceed her insurance coverage, the defendant is allegedly liable for some or all of the plaintiff's uninsured loss.

We have addressed only the theoretical bases for and extent of the defendant's and State Farm's respective liability for purposes of our analysis of the issues presented herein. Whether State Farm could be held liable for, or has been released from liability for, any negligence judgment that may be rendered against the defendant, is not before us and, in any event, does not affect our decision. *See University Nurs. Home*, 506 A.2d at 277 (noting that case that "may be the basis for [the insurer] being ultimately liable for any judgment against [the agent] . . . did not support the conclusion that where there are two wrongs giving rise to two separate damages, a release of the insurance company releases the agent").

■ We now turn to the plaintiff's assertion that the release does not cover the defendant because he is not named therein. "[G]enerally speaking and subject to exception, a party is not released unless named in the release." 66 AM. JUR. 2D *Release* § 34 (2001). Thus, in *Wheat v. Carter*, 79 N.H. 150 (1919), we held that the release of one tortfeasor did not "in and of itself" bar the injured party's suit against additional tortfeasors whose successive acts caused him loss where the additional tortfeasors "were not parties to the release." *Wheat*, 79 N.H. at 152. We have also held that even a release that "purports to comprehend all claims arising from a particular incident, including claims against unspecified strangers, is not dispositive of the question whether the release bars later suit against a party not named in the release." *Gagnon v. Lakes Region Gen'l Hosp.*, 123 N.H. 760, 764-65 (1983).

As the plaintiff correctly notes, the release does not explicitly name the defendant. The defendant argues, however, that "[b]ased on both the nature of [his] relationship with State Farm, and the context of the

[p]laintiff's settlement with State Farm, [he] must be considered part of State Farm for purposes of the release." Specifically, he contends that he is an "exclusive agent of State Farm" and, therefore, "is part and parcel of the entity specifically named in the release." Neither of the cases the defendant cites, however, provide support for this proposition. He cites *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 264 (7th Cir. 1996), and *Genesee Foods v. Meadowbrook*, 760 N.W.2d 259, 263 (Mich. Ct. App. 2008), *appeal denied*, 762 N.W.2d 165 (Mich. 2009), solely to establish that as an exclusive agent of State Farm, his primary duties are to it. He then asserts, without authority, that "[g]iven the nature of this relationship, a release of State Farm would necessarily encompass" him. We cannot say that such a result necessarily follows, nor are we willing to make such a leap without some support or proffered explanation. *Cf. Wheat*, 79 N.H. at 151 (explaining logic behind common law rule that release of one joint tortfeasor releases the others).

We further note that the release does not even purport to cover "agents" of State Farm, exclusive or otherwise, but rather refers only to "its heirs, administrators, executors, successors and assigns." Thus the release is similar to that in *Clear-Vu Packaging*, upon which the plaintiff relies. *See Clear-Vu Packaging*, 434 N.E.2d at 367. There, a release given to the plaintiff's insurer, National Union Fire Insurance Company of Pittsburgh, PA (National), did "not purport to release anyone other than 'National, its successors and assigns.' " *Id.* The court held that the release did not, by its terms, release the plaintiff's insurance broker, Alper Agency, from a claim for failure to procure requested insurance:

> Since the document in question does not mention the Alper Agency nor does it state it is in full satisfaction of all of plaintiffs' claims against all potential parties, we believe it is clear that the parties intended to release only National Union from any liability it might have on the insurance policy. We cannot interpret the language of the release so broadly as to defeat a valid claim not then in the minds of the parties.

*Id.* at 368. We similarly decline to interpret the language of the release in this case so broadly as to cover the defendant here.

The defendant also contends that the release subsumes the instant action because any damages the plaintiff may claim against the defendant "necessarily arise from the same fire loss addressed by the release" and "by representing [therein] that she recovered the full amount in satisfaction of the fire loss, the [p]laintiff has also effectively represented that she has recovered the full measure of whatever damages she may have against [the defendant]." We disagree.

■ ■ Although the defendant does not explicitly cite it, his argument adverts to the theory expressed in *Colby v. Walker*, 86 N.H. 568, 572 (1934): "It appears to be a rule established by several decisions that if there is nothing in the release from which a different intent may be inferred, the conclusion that it was given in exchange for full compensation for the damages to which it relates follows as [a] matter of law." The rule most clearly applied in the case of joint tortfeasors, who by definition were liable for a "single, indivisible harm." *Tiberghein*, 156 N.H. at 116 (quotation omitted). We therefore broadly stated in *Wheat* that it was "settled in this state that the release of one joint tort-feasor is a bar to a suit against the others," *Wheat*, 79 N.H. at 150, on the theory that the plaintiff "has been fully compensated for the loss for which he is seeking to recover in the second suit" and it would be "inequitable" to allow him to recover twice for the same loss, *Wheat*, 79 N.H. at 151. *But see* RSA 507:7-h (1997) (altering rule for joint tortfeasors). Nevertheless, we cautioned in *Stacy v. Company*, 83 N.H. 281 (1928) (superseded by statute on other grounds), "It must constantly be borne in mind that the release is not in and of itself a bar to a subsequent suit against a joint wrongdoer. It is rather the satisfaction of the claim for the injury sustained which bars further actions." *Stacy*, 83 N.H. at 283; *see Colby*, 86 N.H. at 572 (expressing no opinion upon "[w]hether a release of one joint tortfeasor should work a discharge of the others, regardless of the issue of full compensation").

■ Where the wrongdoers are not joint tortfeasors, the case is less clear. We stated in *Wheat* that "when the releasor's loss is caused by the successive acts of two or more persons, most courts hold that the release of one is not necessarily a bar to a second suit." *Wheat*, 79 N.H. at 151. We then held that the release at bar was not conclusive and that the plaintiff could show by parol evidence that he made no claim upon the first wrongdoer for damage caused by the second, and in fact received no compensation therefor. *Id.* at 151-52.

■ With these principles in mind, we conclude that the release given by the plaintiff to State Farm does not operate as a matter of law to bar this action. First, as we previously noted, State Farm and the defendant are not joint tortfeasors. *Cf. Clear-Vu Packaging*, 434 N.E.2d at 369 (concluding that because the insurer and the agent in that case were "not joint-tortfeasors and [were] not concurrently liable for a single indivisible injury to plaintiffs, the release of [the insurer] did not act as a release of [the agent]"). Thus, in accordance with *Wheat*, it would be open to the plaintiff to prove her claim that her settlement with State Farm did not fully compensate her for her loss. Because the plaintiff presented evidence of her

actual damages, a genuine issue of material fact remains on that claim, and, therefore, the grant of summary judgment was erroneous.

■ ■ Moreover, even in cases of joint tort liability, the rule was that "when a release either written or oral does not imply full satisfaction for the injury," the release did not bar suit, but "the amount paid for it discharges the other wrongdoers only to the extent of such amount." *Masterson v. Railway*, 83 N.H. 190, 192 (1927) (general rule superseded by RSA 507:7-h). The release here does not purport to be in full satisfaction of the damages sustained in the fire loss, but rather "in full settlement and satisfaction of rights of the undersigned under policy number 29-J022-618 arising out of" the fire loss. As previously discussed, the rights of the plaintiff under the policy extend only to the policy limits, which may be less than the amount of the loss. Indeed, the plaintiff's position, as explained in her affidavit, is that her actual damages from the fire loss exceed the amount she received in settlement from State Farm, but that she relied upon representations by the defendant and State Farm that she "was settling [her] fire loss for the maximum amount that they were obligated to pay under the policy . . . based on the fact that [her] insurance was limited and did not provide full coverage." Because the release purports only to be in satisfaction of the plaintiff's claims under the policy, it does not operate to release her claims against the defendant as a matter of law. *See Colby*, 86 N.H. at 573 (noting that "a specific statement [in the release] of what is dealt with fairly excludes all that does not come within the scope of the statement").

■ Having determined that the release does not, by its terms, cover the defendant or purport to be in full satisfaction of the plaintiff's loss, we conclude that it does not support the trial court's grant of summary judgment. It is of course open to the defendant, through the introduction of sufficient evidence at trial, to meet his burden of proving the affirmative defense that "the release was intended to discharge [him] or that the plaintiff has received full compensation." *Gagnon*, 123 N.H. at 765. At the summary judgment stage, however, the release is insufficient to establish either of these theories of defense as a matter of law.

■ The second basis for the trial court's grant of summary judgment is that the plaintiff filed a proof of loss for less than her coverage under the State Farm policy. Apparently informing the court's conclusion was an affidavit by a claims representative for State Farm stating that the plaintiff's policy contained a standard "increased dwelling coverage, equal to 20% of the initial dwelling coverage," and that with that increase, her coverage exceeded the settlement amount. Although the plaintiff claims she was never advised of this available increase, we need not consider it a

disputed issue of fact because the defendant now maintains that "whether her loss was in excess of or less than the policy limits" is "immaterial." We agree, since as the defendant contends, the real issue in whether the proof of loss bars this action is whether it establishes that the plaintiff has been fully compensated. *See Wheat*, 79 N.H. at 152 (noting that injured party's suit against a tortfeasor not party to a prior release would be barred if the injured party "ha[d] already been compensated for the loss he is seeking to recover").

▮▮ The proof of loss signed by the plaintiff on January 19, 2007 represented: (1) "THE ACTUAL CASH VALUE of the described property at time of loss was . . . $357,839.20" for the building; (2) "THE REPLACE-MENT COST of the described property at time of loss was . . . $357,839.20" for the building; and (3) "THE ACTUAL LOSS AND DAMAGE to the described property as a result of said loss was . . . Building $357,839.20." The defendant contends that this document establishes that the plaintiff was fully compensated for her entire loss from the July 27, 2005 fire and, because any damages she claims against the defendant arise from the same fire loss, she has no outstanding damages against him. The plaintiff, on the other hand, asserts that the proof of loss is not a binding admission and is open to explanation. We agree.

As the Court of Appeals of Texas has explained,

> The purpose of a proof of loss is to advise the insurer of facts surrounding the loss for which a claim is being made, and to afford the insurer an adequate opportunity to investigate, to prevent fraud, and to form an intelligent estimate of its rights and liabilities. Statements made in proofs of loss are not conclusive as to the claimant, provided they were made in good faith and without an intent or attempt to defraud the insurer.

*In re Republic Lloyds*, 104 S.W.3d 354, 359 (Tex. App. 2003) (citations omitted). Accordingly, while statements by the insured "against his own interest are ordinarily admissible as admissions[,] . . . where . . . no question of estoppel is involved, such statements are not conclusive, but are open to explanation and correction." *Giroux v. Insurance Co.*, 85 N.H. 355, 356 (1932) (involving proof of death in a claim on a life insurance policy); *see Steenburg v. Harry Braunstein, Inc.*, 77 A.2d 206, 208 (Del. Super. Ct. 1950) (noting "[t]he fact that [the plaintiff] valued her coat at $765 when filing her proof of loss [with the insurer], while an admission against interest, does not preclude an action [against the bailee allegedly responsible for the coat's loss] to recover a greater amount").

▮ Estoppel requires, among other things, that the representation or concealment of material fact induced the other party "to act upon it to his

prejudice." *Hodge v. Allstate Ins. Co.*, 130 N.H. 743, 746 (1988) (quotation omitted). Although the defendant argues that "it is fundamentally unfair and prejudicial to the [d]efendant for the [p]laintiff to have accepted the amount submitted in the proof of loss from State Farm, an indication that she was fully compensated under her policy, and now attempt to hold the [d]efendant liable for the same loss," he fails to identify any way in which he, or State Farm for that matter, detrimentally changed position in reliance upon the proof of loss. *Cf. A. W. Sewell Co. v. Commercial Casualty Ins. Co.*, 15 P.2d 327, 330 (Utah 1932) (insured not estopped to deny or explain statement in proof of loss where court was "unable to see in what way [the insurer] ha[d] acted to [its] disadvantage").

In addition, "[t]he burden of proving estoppel is upon the party asserting it, and its existence is a question of fact to be resolved by the trier of fact." *Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 690 (1979). Thus, where the trial court did not first find estoppel as a matter of law on summary judgment, it erred in treating the plaintiff's statement of damages in the proof of loss as a conclusive admission precluding her from proving greater damages against the defendant.

Finally, we do not find *Omscolite Corp. v. Federal Insurance Co.*, 132 N.W.2d 154 (Mich. 1965), which the defendant considers "strikingly similar" to this case, persuasive. In *Omscolite*, the plaintiffs, after having been paid the policy limits under their policies, sought to recover an additional amount from their insurers and agent on grounds that the agent "negligently and carelessly failed to obtain sufficient insurance" coverage. *Omscolite*, 132 N.W.2d at 155. The court found the proof of loss executed by the plaintiffs fatal to their claim:

> While plaintiffs now assert a loss in excess of the policy limits, at the time the settlements were entered into they did not show by their proofs of loss the existence of same, nor is such a total loss acknowledged and accepted by the insurance companies. In any event, whatever plaintiffs' loss may have been, whether in excess of the policy limits or less than the policy limits, the acceptance by the insurance companies of the face amounts of the policies as being plaintiffs' loss thereunder constituted agreement upon a figure which was subject to negotiation by the parties. Once accepted and agreed upon, the insurance companies could not dispute plaintiffs' proofs of loss and plaintiffs cannot now assert what is in effect a greater claim than that to which they previously agreed.

*Id.* at 155.

814

*Omscolite* involved claims directly against the insurance companies as well as the agent and focused upon an agreement between the plaintiff and the insurers as to the amount of the loss. *Id.* at 154-55. The court did not separately discuss the negligence claim against the agent and noted that the plaintiffs conceded below that the agent would be released from liability on their contract claim if the insurers were released. *Id.* at 156. In the instant case, against the defendant agent only, we find more persuasive the reasoning in *Powers v. Latimer*, 450 S.E.2d 295 (Ga. Ct. App. 1994), which noted that the proof of loss was "between [the insured plaintiff] and her insurer and contains no language prohibiting [the plaintiff] from pursuing an action against" a separate tortfeasor. *Powers*, 450 S.E.2d at 298. The court held that the proof of loss did not bar the action against the tortfeasor or support a grant of summary judgment against her, but, "at most, [could] be considered an admission against [the plaintiff's] interests with regard to the amount of damages." *Id.* We conclude the defendant is a stranger to the proof of loss and is not a beneficiary of any "agreement" therein.

In light of our foregoing conclusions, we need not address the plaintiff's remaining argument that the proof of loss is inadmissible under New Hampshire Rule of Evidence 408.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.